### THE STATE v. A. B. JENNINGS.

*Secret Felonious Assault—Statute—Verdict.*

1. The statute—ch. 32, Laws of 1887—which provides that "any person who shall maliciously commit an assault and battery with a deadly weapon upon another, by waylaying, *or otherwise in a secret manner*, with intent to kill, shall be guilty of felony, embraces assaults made upon one who has no notice of the purpose or presence of the assailant, though it may be in a public place and in the presence of others, without any attempt on the part of the assailant to conceal his identity, as well as assaults made by lying in wait, or in such manner as tends to conceal the identity of the assailant.

2. Upon the trial of an indictment charging a secret felonious assault, the jury may be instructed that if they find that only a simple assault and battery was committed, they should return a verdict of guilty (Laws 1885, ch. 68). In such cases, however, it is suggested that the jury be directed to return a verdict of "not guilty of the felony charged, but guilty of an assault."

The defendant was indicted for Secret and Malicious Assault with intent to kill (under ch. 32, Laws of 1887), and tried at the August Term, 1889, of the Superior Court of LENOIR County, before *Bynum, J.*

The prosecutor and another witness were examined for the State. No testimony was offered for the defendant. The material parts of the testimony were, in substance, as follows: "The prosecutor was standing on the public square, eight or ten feet from the street, in Kinston, during the early part of one night in the February previous to the Court, with his hands in his pockets, looking at an "Indian show," when he received, in quick succession, a cut with a knife in the neck, another on the back of his shoulder, and three or four on the head. He pulled his hand out of his pocket and put it to his face and felt blood, but still did not know from what quarter the blows came. He turned, getting a

cut in the forehead, and recognized and grabbed the defendant, when they went down in a struggle. The assault was made from behind, without notice to the prosecutor. The streets were lighted up so that a person might be seen and recognized thirty or forty feet on the street. A large crowd of people were standing just behind the prosecutor, but he did not know who was cutting him till he turned and received a cut in the face. The prosecutor was picked up and carried to a doctor's office and fainted. There were three or four hundred people on the square, and in the street, before and behind the prosecutor. The defendant said, just as he was pulled away from the prosecutor, " I tried to kill him." There were people in the windows of the court-house.

The other witness testified further, in substance, that there were people standing on the streets, in the store-doors, behind the prosecutor, and in such a position as to command a view of the defendant when he attacked the prosecutor. The defendant was cutting the prosecutor when that witness first saw him, and soon after some one took hold of him. Defendant did not attempt to run. The defendant offered no testimony.

*The Attorney General*, for the State.
*Messrs. George Rountree* and *N. J. Rouse*, for defendant.

AVERY, J.—after stating the facts: The statute under which the indictment was drawn provides " that any person who shall maliciously commit an assault and battery with any deadly weapon upon another by waylaying, or otherwise in a secret manner, with intent to kill such person, shall be guilty of a felony," &c.

The Judge in the Court below was requested to instruct the jury, among other things, in substance, that the statute includes those assaults and batteries which are committed in such a manner as tends to conceal and keep from the public

the identity of the assailant, and thereby evade the law and escape punishment, but does not embrace an assault made without any attempt to conceal his identity, though the person assaulted may be taken at a disadvantage and stricken without notice.

In view of the instruction asked, the Court charged the jury, in substance, that if the attack was made in such a way as to prevent Lowry (the prosecutor) from seeing who was making the attack, or from repelling it, then that was a secret assault, and if the jury found, also, that defendant made the assault with a deadly weapon, and with intent to kill, and was actuated by malice against the prosecutor, they would return a verdict of guilty of the felony, as charged.

We concur in the construction placed by His Honor upon the statute. It was not the purpose of the Legislature to reach only men who lie in wait to wreak vengeance on their enemies, or who try to cover up their tracks and conceal their identity in order to evade the punishment. The law looks primarily to the protection of the life of the party assailed, and that consideration rises in dignity and importance above every other. Under the law of self-defence one may repel force by force to save his person, and he may shoot down another who is attempting to commit arson or burglary upon his dwelling for the purpose of protecting his property when necessary. If the offender maliciously burn or breaks into the house with felonious intent in the night-time, the crime is punishable with death, and one of the reasons for inflicting such penalty is that the owner may be taken at a disadvantage and slain by the felon to conceal the one crime, or, in the other case, the owner may perish in the incendiary flames for want of notice.

So the attempt to conceal from the owner the fact of taking and appropriating to one's use his goods, is among the strongest evidence of a felonious intent. The owner, with notice, will possibly hold fast to his property, or follow

and reclaim by voluntary surrender or legal process; but he is, above all persons, alive to the importance of protecting it, and the taker understands that a knowledge of the taking on his part endangers his person and imperils his success.

The idea of fair play, which commends itself to the common sense and reason of mankind, permeates the whole range of criminal law intended for the protection of the person and property, and there seems to have been a leading purpose in its origin to insure to every one, not only the right, but as far as possible the opportunity by his personal presence and reasonable resistance, to prevent injury to either.

One who lies in ambush may succeed both in wounding or killing his adversary and conceal his identity, but it is no less an attempt at assassination, falling under the general description, otherwise in a secret manner (or in such a way as to surprise the party assailed) to cut and thrust one, standing with his hands in his pockets, from behind on the neck, head and shoulders with a knife. A word of warning in such cases may enable the person threatened to escape by flight or save himself harmless by resistance. This statute was intended to follow in the old wake, and make it doubly dangerous to assail a person on unequal terms, and with a deadly purpose, and thus deter men who are mad with malice, by the terrors of threatened punishment, from inflicting injury on those who are innocent and unsuspecting, and both deserve and need to be shielded by the power of the State.

We think that this interpretation of the statute harmonizes with the whole criminal code of North Carolina, protects men from surprise by secret foes, and makes secrecy the test of the commission of another crime, as it is already a badge of fraud and evidence of evil intent in other cases.

The words of the statute should be construed according to their natural import. Potter's Dwarris, p. 127, 1; *ibid*

122, 8 & 10. So taken, it includes not only the case of one who, by waylaying, attempts to conceal his identity from other persons as well as the party injured, but also that of a person who, otherwise than by lying in ambush, hides his purpose from the party assailed till it is too late to guard against its accomplishment. The usual, if not the only, mode of concealing identity, or attempting to do so, in order to evade detection and punishment, is by laying in wait, concealed from view, or by waylaying, which is synonymous with the other expression and the words "otherwise," in a "secret manner," must have been meant to reach just such cases as that at bar.

The Act of 1868, to which reference was made by counsel in their earnest and able presentation of their grounds of appeal, was widely different in its provisions from the Act of 1887. It, in plain terms, made every man who struck another, or attempted to strike him in striking distance, either with a weapon, deadly *per se,* or declared by the Court to be deadly, punishable, upon conviction, with imprisonment in the State prison. So that, if one used, upon a sudden impulse, and provoked by grossly insulting language, a stick that might produce death, or, in the heat of passion, while willingly engaged in an affray, struck with such a stick or stone, he was guilty of an offence punishable with infamous punishment. According to the plain import of the Act of 1887, if one of several persons already engaged in a general affray should covertly strike another, without warning, from behind with a deadly weapon, it is necessary to prove also, affirmatively and fully, by the declarations of the party accused, or by other facts and circumstances, that he was actuated by malice in making the secret assault. On failure of such proof, he could not be convicted.

The defendant asked the Court to instruct the jury " that, under this indictment, the jury cannot find the defendant

guilty of a common assault and battery with a deadly weapon, nor of assault and battery with intent to kill."

The cutting with a knife by the defendant was admitted. The Court, after instructing the jury what it was necessary to prove beyond a reasonable doubt, in order to establish the guilt of the defendant in manner and form as charged in the bill, told them that, if they were satisfied that the secret felonious assault had been committed as charged, they would return a verdict of "guilty." But he told them further that an assault with a knife was admitted, and, if the jury should determine under the instruction that the defendant was not guilty of the felonious assault as charged, then they would return as their verdict "guilty of assault."

If this instruction was erroneous, we cannot see how the defendant has been injured by it, because, under proper instructions, the jury found him guilty as charged, and had, therefore, no opportunity to consider or act upon the suggestion of the Judge. * * * But we agree with the Court below that indictments like this come under the provisions of chapter 68 of the Laws of 1885, "that, on the trial of * * * any felony whatsoever, when the crime charged shall include an assault against the person, it shall be lawful for the jury to *acquit* of the felony and to find a verdict of guilty of an assault against the person indicted, if the evidence shall warrant such finding." But we suggest that the language of the law ("it shall be lawful for the jury to acquit of the felony") seems to require as the verdict of the jury, "not guilty of the felony charged, but guilty of an assault," and this would be analogous to the finding, in a case where a prisoner is charged with murder but convicted of manslaughter, "not guilty of the felony and murder of which he stands charged, but guilty of felonious slaying."

All discussions of this kind might be avoided in future, and inexperienced juries might be saved from perplexity,

by drawing the bills of indictment with two counts. Though not essential, it is not erroneous to do so.

We conclude, therefore, that there was no error that would entitle the defendant to a new trial.

Affirmed.