### STATE v. J. S. GUNTER.

*Indictment for Secret Assault—Assault from Ambush.*

1. An assault cannot be said to have been made in a secret manner except when the person assaulted was unconscious of the presence as well as of the purpose of his adversary.

2. Where, in a trial of an indictment for a secret assault under the statute (Ch. 32, Acts of 1887) it appeared that the prosecutor, after being ordered from defendant's premises, saw the defendant come out and, by pointing, directed his wife's attention to a certain place near by from which prosecutor inferred that it was defendant's intention to go there and shoot him, and that, thereupon, prosecutor went home, returned with his gun and searched for defendant who, before prosecutor discovered his whereabouts, shot at and wounded the prosecutor who recognized defendant by the flash of the gun : *Held*, that the assault was not made "in a secret manner" within the meaning of the statute. (Clark, J., dissents, *arguendo*.)

This was an indictment against the defendant, Jasper Gunter, for a secret assault on his brother, J. C. Gunter, tried before *Shuford, Judge,* and a jury, at the Fall Term, 1894, of the Superior Court of Graham County.

J. C. Gunter, the principal witness for the State, testified that he is the brother of the defendant, and that a feud has existed for several years between himself and the defendant ; that on a certain morning, within a short time before the finding of the bill of indictment, he and some members of his family were near the defendant's premises, and were in the act of entering a pair of bars opening into a field, which was in dispute between himself and the defendant, when the defendant hallooed to them to leave, or something to that effect, and as they did not leave, the defendant ran into his house and came out with a gun in his hand, and stopped and said something to his wife, which the witness

did not hear, and pointed in the direction of a place near the bars and a short distance from the witness, and the witness inferred from defendant's motion that the defendant was going to this place for the purpose of shooting the witness; that the witness ran to his own house—a distance of a few hundred yards—and got his gun and a pistol and came back toward the bars, and near the place to which the defendant had pointed, and was looking for the defendant, when the defendant fired his gun at the witness from ambush and shot the witness in the leg; that the witness fell, and as he fell he looked toward the place from where the report of the gun came, and saw and recognized the defendant, about sixty yards away with his gun; that the witness then aimed his gun at the defendant and attempted to shoot, but his gun failed to go off, and he then fired three shots with his pistol.

The defendant asked the Court to charge the jury that, inasmuch as the prosecuting witness had been put on notice as to where the defendant was, and was in search of the defendant, and was expecting to be assaulted by him, the defendant was not, according to the State's own testimony, guilty of a secret assault.

The Court declined to give this instruction, and left it to the jury to determine whether or not the defendant assaulted the prosecuting witness with a gun, as charged in the bill of indictment, and told the jury that if the defendant committed the assault, and committed it with malice and with intent to kill, and was at the time concealed from the witness' view so that the witness could not see him, nor see that the assault was about to be made, the defendant would be guilty of a secret assault, although the witness might have had reason to believe that the defendant was near, and meant to assault him.

To this charge the defendant excepted.

The jury retnrned a verdict of guilty against the defendant, and the defendant thereupon moved that the judgment of the Court be arrested on the ground that the bill of indictment was defective, in that it failed to set out the manner of the assault.

This motion was overruled, and the Court pronounced judgment, from which the defendant appealed.

*The Attorney General*, for the State.
*Mr. J. F. Ray*, for defendant (appellant).

AVERY, J. : An "assault cannot be said to have been made in a secret manner except where the person assaulted is unconscious of the presence as well as of the purpose of his adversary." *State* v. *Patton*, 115 N. C., 753. According to the testimony of the prosecuting witness himself, he saw the defendant come out of the house after ordering himself and his party to leave his premises, and he (prosecutor) inferred from defendant's pointing to a place near where he stood that it was the defendant's purpose to go to that place and shoot him. Acting upon this inference the prosecutor ran to his own house, a distance of a few hundred yards, and returned armed with a gun and a pistol, and began to search for the defendant about the place where the latter had indicated to his wife by pointing, that it was his intention to go. The defendant "from ambush," as the prosecutor testifies, shot at him before his hiding place was discovered. At the flash of the gun however, the assailant was seen and recognized by the prosecutor. It seems therefore that though not previously discovered, the defendant was not concealed, but was within the range of the prosecutor's vision, if properly directed, all the while.

It was never intended by the Legislature that one, who

had run several hundred yards to arm himself with gun and pistol and had returned for a battle royal with an adversary whom he knew to be armed and ready and anxious for the conflict, should be allowed, because the adversary had meantime taken the prudent precaution to step behind a bush in order to get the first fire, to invoke the aid of the criminal law to have him convicted of a felony for exhibiting such superior strategy. The statute was enacted to protect the innocent and unwary, not armed belligerents who, in the search for an enemy, draw his fire from behind a masked battery. From the prosecutor's own testimony he was fully aware of the defendant's design, and instead of keeping out of his way, sought him where he expected to find him. The State cannot now, because the latter changed his position in the face of apparent danger and shot before he had been thrown on the defensive, insist that the assault was a secret one, or that the injured party was surprised. He had been taken at no disadvantage because he knew of the intent to shoot on the part of the defendant and was thoroughly prepared to meet it. *State v. Jennings*, 104 N. C., 774. He knew the neighborhood of his proposed rendezvous and was beating the bushes for him, at his own game, when he was anticipated in his design.

It was never intended by the Legislature that one, who is armed and on the alert seeking an opportunity to shoot another, should be held the victim of a secret assault because his adversary steps out of the open way in order (if we may use a provincialism) "to get the drop on him," instead of boldly confronting him, till pressed to the wall by a deadly assault. The law was not intended to drive a defendant to the dilemma of either waiting till he can make out a case of self-defense with all of the attendant risk, or subjecting himself to liability for a secret assault

by taking the initiative as against one who is searching for him with deadly purpose and prepared to carry it out, and who is fully aware that he is in the vicinity and is likewise armed. With such knowledge of the presence and purpose of the defendant, if the prosecutor was taken at any disadvantage, it was because he wilfully exposed himself, with notice of the extent of his own danger. It further appears that the person, who for the purposes of the prosecution poses as an innocent sufferer from a secret and unexpected assault, was himself trying to overcome forcible resistance to a forcible entry upon land in possession of the person who offered the resistance. The assault was not, in any aspect of the testimony relied upon by the State, made in a secret manner. In refusing to instruct the jury, as requested, there was error which entitles the defendant to a new trial.

New Trial.

CLARK, J. (dissenting): There is no exception raising any suggestion that the defendant acted in self-defense. The sole exception is that he did not commit the assault "in a secret manner." The Legislature, taking note of the fact that while an attempt to commit either of the other three capital offences was a felony, the attempt to murder was only a misdemeanor, punishable with fine and imprisment, enacted Ch. 32, Acts 1887, which provides that a malicious assault and battery with deadly weapon "by waylaying or otherwise, in a secret manner, with intent to kill" should be a felony. This assault was made with a gun and with intent to kill, the prosecutor being shot in the leg. The witness is uncontradicted who testified that the defendant "fired his gun at him from ambush." It would seem that this was "by waylaying, or otherwise, in a secret manner." Indeed, it is the very mischief intended to be met by

STATE v. GUNTER.

the Act which proposed to lessen the number and danger of assaults with intent to kill by requiring the party under fear of heavier penalty to fight without concealment, openly and fairly. Furthermore, the Judge charged the jury that the defendant was guilty of a secret assault if "he was at the time concealed from the witness's view (the witness being the man who was shot) so that the witness could not see him, nor see that the assault was about to be made," although the "witness might have had reason to believe that the defendant was near and meant to assault him." This would seem correct. If a man intending to travel a certain road is told that an enemy is lying in ambush for him, and such enemy does fire on him from ambush and wound him, it is none the less an assault in a secret manner because the victim was put on his guard and was looking out, gun in hand, to protect himself. The only difference in this case is that the witness was warned not by a friend, but by seeing the defendant enter the thicket along the intended path of the witness, with a gun in his hand. The witness got his gun and while going along the path "was shot from ambush" by defendant who was "concealed from view" so that witness could neither "see him nor that he was about to shoot." The secret manner deprecated by the statute is just this mode of proceeding, and its secrecy is not taken away by the fact that, by warning of friends or the previous evidence of his eyes, the witness had reason to believe that a man was lying in ambush with intent to kill him. In *State* v. *Jennings*, 104 N. C., 774, it was held to be a secret assault when the prosecutor, standing in the public square of a town, was cut with a knife from behind by the defendant whom the prosecutor immediately grabbed. The Court held that it was not *necessary that defendant should have endeavored to conceal his identity*, but that the statute was based "on the idea of

116—68

fair play," and to make it "doubly dangerous to assail a person on unequal terms" which in that case consisted in striking the witness with a knife before he was seen. This is approved in *State* v. *Shade*, 115 N. C., 757, and *State* v. *Patton*, *Ibid*, 753. In all three cases it is expressly stated that "shooting by one lying in ambush" would be plenary proof of an assault in a secret manner and that less would be sufficient. In the present case, the testimony of the witness is uncontradicted that he was "shot from ambush" by a concealed person whom he could neither see nor see that he was about to shoot. The jury found from the evidence that the defendant was the man who, while thus concealed in ambush, shot the prosecutor.