STATE v. DAVE WHITFIELD, TOM WATSON and SAPP HOGAN.

(Filed 10 November, 1910.)

1. Appeal and Error—Evidence—Sufficiency—Instructions.

An assignment of error that the evidence was not sufficient to be submitted to the jury will not be considered on appeal in the absence of a prayer for special instruction to that effect, presented at the close of the evidence.

2. Secret Assault—Dynamite—Dwelling—Threats—Intent—Evidence Sufficient.

Evidence of a secret assault charged to have been made by three defendants by dynamiting a house in which one H. and his family were sleeping is sufficient to go to the jury which tends to show that H. had been employed by the chief of police of the town as a special detective to assist in executing the law against selling spirituous liquor, and had given information upon which the defendants had been indicted; the defendants had endeavored to induce H. to have the warrants withdrawn; the defendants were close friends and had made threats against H.; one of

them shortly before the explosion making threats against his life, the other saying he would like to go to his funeral; two of them concurred in getting dynamite that same evening, and directed it to be placed under the house of H.; two called at the house shortly before the explosion and inquired for H., and the other was present immediately thereafter.

APPEAL by defendants from *W. J. Adams, J.*, at the June Term, 1910, of GUILFORD.

The facts are sufficiently stated in the opinion of the Court.

*Attorney-General* and *Geo. L. Jones* for the State.

*Wilson & Ferguson, Morehead & Sapp* and *John A. Barringer* for defendants.

CLARK, C. J. The defendants, Hogan, Whitfield, Watson and Colwell, were indicted for secret assault upon Everett Hamilton, by dynamiting the house, where Hamilton and his family were sleeping, on the night of 12 June, 1910. They were all found guilty, and all but Colwell appealed.

The first assignment of error that the evidence was not sufficient to be submitted to the jury could not be considered, unless there was a prayer to that effect, presented at the close of the evidence. *S. v. Harris*, 120 N. C., 577, and cases there cited, and the annotations to that case in the Annotated Edition. However, as it is not entirely clear from the record whether such prayer was submitted, we will consider the error alleged.

The evidence is that Hamilton operated a small store in Greensboro, attached to which were three or four rooms in the rear which were used as a dwelling. This part of the house was blown up by dynamite on the night of 12 June, 1910, and the inmates narrowly escaped death. Soon after the explosion, the defendant Colwell was there and asked Hamilton if he had any idea who did it. A few moments before, some one stepped on the porch and said: "We want to stay all night; we are from Salisbury." At Hamilton's request, his wife replied that he was asleep, and she would not wake him, and besides, they had no room in the house, and they could not stay. Hamilton testified that he recognized the voice as that of defendant, Hogan. The parties then left, and in a few minutes the blinds were

thrown open, the window lights knocked out, and then followed the explosion. Hamilton also testified that the same evening the defendant, Whitfield, his brother, Tom, and several others were at his house; that while there, the defendant Whitfield asked Hamilton if there was a warrant out against him (Whitfield), and he replied that he thought there was; Whitfield then asked him to arrange to have it taken up, and offered to send the witness down street in a carriage. Whitfield's brother said to witness, in the presence of defendant, Whitfield: "I am going to get even with you." There was evidence that the mayor and chief of police had employed Hamilton as a detective to assist in executing the law against gambling, and liquor selling, and that he reported all these defendants, and that warrants were out for all of them at the time the dynamiting was done. Mrs. Hamilton testified that two days before the explosion the defendant Hogan came to her house, asked for Hamilton, and finding that he was not in, began cursing him, and said he would give him something to take out warrants for; said if he met him he would kill him. Another witness for the State testified that on Saturday evening, before the explosion that night, he saw the defendants, Whitfield and Watson, together, and heard Whitfield ask Watson if he had seen George Colwell, and upon his replying no, he asked Watson, "Have you got that dynamite?" who replied, "No, I gave your wife the money, and told her to get the dynamite, and put it under the lower corner of the house," and pointing to the corner of Hamilton's house said, "I told her to put it there." Whitfield said "I will kill Hamilton if he messes with my business," and Watson replied "I would like to go to his funeral;" that afternoon he saw Whitfield's wife, Whitfield and Watson together, and that after they separated he heard Watson call Loula (Whitfield's wife) and ask her to stop; that he then went up to her and gave her money and told her to get something, adding "Bring it back here." There was evidence that these four defendants were bosom friends and stayed and went together all the time. Hogan, when arrested, made contradictory statements as to his whereabouts that night.

There was evidence that these defendants were all much irri-

tated against Hamilton because warrants had been issued against them, on account of evidence procured against them by Hamilton, as a detective; that they had endeavored in vain to get him to withdraw the warrants; that they had made threats against him; that two of them had concurred in getting dynamite that same evening, and directing it to be placed under Hamilton's house; that one of them accompanied by other parties called at the house shortly before the explosion, evidently to learn if Hamilton was at home, and that another was present immediately after the explosion, doubtless to learn if he had been killed, and that all four of these defendants were inseparable companions and engaged, probably jointly, in the illicit sale of spirituous liquor, for warrants were out against all of them at the same time, as the result of the detective work done by Hamilton. The judge did not err in submitting the case to the jury.

The other exceptions do not require serious discussion.

No error.