The defendant was convicted of secret assault upon an (734) officer, J.W. Cole, and from the judgment of fifteen years confinement at hard labor in the State Prison, upon such conviction, appealed to this Court. Randolph Stephens was tried upon the same bill of indictment, at the same time as the defendant. He was convicted and sentenced to four years imprisonment, but did not appeal.
On the afternoon of 30 January, 1919, the defendant, with Randolph Stevens, went to Burke County and obtained a quantity of whiskey, eight or ten gallons, which they brought back with them in an automobile to Gaston County. As they returned home that night, about 8:30 o'clock, they were stopped by J.W. Carroll, sheriff of Gaston County, and his deputy, J.W. Cole. As soon as *Page 789 
they were discovered by the officers, they jumped out of the car and fled. Later in the night the officers, having recognized both of the parties, went to the house of Stevens in search of them, about eleven o'clock, for the purpose of arresting them, as they had the liquor for sale contrary to law, as Bridges admitted several timers. The sheriff approached the house from the front, while J.W., Cole, alone, went around to the east side of the house towards its rear door. After turning the east end of the house, he suddenly saw, in the darkness, a man looming up before him. He had his pistol in his right hand, pointing downward at the time, while in his left he carried a flashlight. Lifting his left hand he flashed his light and saw that the man in front of him was Stevens, while just behind him was the defendant Bridges, with a gun pointing directly at the prosecutor. Immediately upon the flash of the light Bridges fired directly at the head of Cole, the shot taking effect in his face, and destroying the sight of one of his eyes. He, in his testimony, gives this account of the shooting:
"I started to the back door, and as I turned the corner of the house I had a flashlight in my hand, and saw Stephens, and right by his head a gun and a flash. That flash was just as soon as I turned the corner. I saw Jack Bridges. He had a gun and had it up to his shoulder like that (indicating). I had not stopped — Just as soon as I turned the corner this firing took place. I did not know anybody was there prior to the time I turned the corner. My face was shot up; got three shot in the corner of one eye and lost that eye; was wounded in one hand; stayed in the hospital about three weeks; don't know how many shot I had in my face and nose; my nose was crushed from here down (indicating); I lost the forefinger on my right hand; thumb was mashed and broken up a little. I was knocked down; didn't hear the shot, but was conscious about the time they got me up. The manner in which my right-hand finger and thumb got wounded, I suppose I had them up here (indicating). My pistol is not here; it is at the jail. I had a searchlight in my left hand, and the pistol in my right hand. Bridges had a shotgun. He looked to be about 7 or 8 feet from me at the time of the (735) flash of the gun. I was not conscious of the presence or purpose of defendant, Stephens, before the flash. When the gun flashed, Stephens looked to be about 6 feet from me, and it looked to me that Bridges was just about the length of the gun behind him. Stephens had a shotgun in his hand. (Pistol is handed witness.) This is the pistol I had that night; had it in my right hand, and the flashlight in my left hand. The defendant Bridges fired the shot from the shotgun; I do not know how many shots he fired. I saw Bridges fire that *Page 790 
shot. The shot damaged the pistol; knocked the cylinder to one side; can't work it at all. You can see shot print all over here. (Exhibiting the pistol to the jury.) I did not attempt to shoot either one of these defendants at this time; I did not raise my pistol in any way for the purpose of shooting either of these defendants."
The sheriff, J.W. Carroll, testified in regard to admissions of defendant Bridges as follows:
"On the night he was arrested, and just after his arrest and after the handcuffs were put on him, when we started back to Shelby, I just looked around and put my flashlight on him to see if I knew Bridges, and said: `Jack, how come you to shoot him?' `I don't know how come me to shoot him.' `Too much mean liquor.'"
The sheriff afterwards saw him in the Charlotte jail, and in regard to this testified:
"I spoke to him in the jail; he asked how Mr. Cole was; I told him he was getting some better, and he said, `I'm glad of that.' I asked him about the shooting. He said he shot and then ran; that Stephens was standing right in front of him; he told me about his trip."
When the sheriff was bringing him from Charlotte to Gastonia for the trial, "he opened up and commenced talking about it; on the night he was arrested he said he did not know who had been shot until he read it in the papers, and said he didn't know how he came to do it; I think that was the statement." He told the witness, J. M. Kendrick, that he would not have shot Cole if he had not been drinking.
Bridges' codefendant, Stevens, told the sheriff that Cole came around the corner running — came to the corner, and made about two steps; as he came around the corner he, Stevens, was standing about at the bottom step with his gun in his hand, and Cole had a pistol this way (indicating), down at his side; and just as the gun fired, his hand got up to his face, his pistol in it, as though to protect his face. Cole did not make any effort to shoot. The pistol was in his right hand, and he threw it up to his face as the gun fired.
That night, after the two defendants had escaped from the automobile, they made their way to the back of Stevens' house, where they discovered that the sheriff, with his posse, was looking (736) for them to arrest them. Then they went off, and after Bridges had secured a double-barrel shotgun for himself, and a single-barrel one for Stevens, they returned to Stevens' house, Bridges saying "that he did not aim to be arrested, and the first man that sticks his head in the door will get it shot off, and there is nobody coming in here after me. I'll shoot the first man that comes *Page 791 
in here." There is much evidence in the case, but this recital of it will be sufficient, at least, for the present.
Defendant Bridges requested that certain instructions be given to the jury, which will be noticed hereafter.
There was a verdict and judgment against the defendant Gilton, or "Jack," Bridges, and he appealed.
after stating the facts as above: There are numerous exceptions, and we will consider them in the order of their statement in the record, grouping those relating to the same subject.
1. We are unable to see how the testimony of J.W. Cole, one of the officers, as to his shooting at the tires on the wheels of the automobile in which the defendants were riding, and in which they had the whiskey, prejudiced the appellant. The defendants did not stop the car when ordered by the officers to do so, and Cole fired his pistol, not to injure them, but to frighten them so that they would stop and not escape from the officers. It was a part of what occurred when the officers were trying to arrest the defendants, and even if not strictly relevant, it was only harmless.
2. The evidence as to the confessions of Bridges, while in custody of the officers, was clearly competent. The court carefully inquired into the facts, and found that there were no promises to induce Bridges to confess, and no threats to extort or coerce a confession from him, and that they were voluntary. The mere fact of his being under arrest did not render them incompetent. We have frequently held that confessions are competent where there were no inducements held out, and no intimation or threats to elicit them, even though the defendant was, at the time, in the custody of an officer or in prison. S. v. Bohannon, 142 N.C. 695; S. v. Bowden,175 N.C. 794.
3. The motion to nonsuit was properly overruled, as there was ample evidence to sustain a conviction, and this is also true as to the prayer to instruct that upon all the evidence the jury should acquit Bridges. The special ground upon which this exception was based is that there is no evidence of the secrecy of the assault on J.W. Cole, the officer. The language of the statute (Rev. 3621) is that if any person shall maliciously commit an (737) assault and battery, with a deadly weapon, upon another by waylaying, or otherwise, in a secret manner, with intent to kill *Page 792 
such other person, he shall be guilty of a felony. It is not essential to a conviction, under this statute, that the assault shall be committed by waylaying alone, as it is not the only kind of secret assault contemplated by the Legislature, but the assault may be committed in any other secret manner. In S. v. Jennings, 104 N.C. 774, the judge gave an instruction to the jury, where the element of secrecy was really not as pronounced as it is in this case, that if the attack was made in such a way as to prevent Lowry (the prosecutor) from seeing who was making the attack, or from repelling it, then that was a secret assault, and if the jury found also that defendant made the assault with a deadly weapon and with intent to kill, and was actuated by malice against the prosecutor, they would return a verdict of guilty of the felony as charged. This Court, on appeal, approved the charge as proper in itself, and as a correct qualification of the one requested by the defendant, which was to this effect, that the statute includes those assaults and batteries which are committed in such a manner as tends to conceal and keep from the public the identity of the assailant, and thereby evade the law and escape punishment, but does not embrace an assault made without any attempt to conceal his identity, though the person assaulted may be taken at a disadvantage and stricken without notice. And the Court held generally that the statute embraces assaults made upon one who has no notice of the purpose or presence of the assailant, though it may be in a public place and in the presence of others, without any attempt on the part of the assailant to conceal his identity, as well as assaults made by lying in wait, or in such manner as tends to conceal the identity of the assailant. In the later case of S. v.Patton, 115 N.C. 753, the language of the Court in the Jennings case was modified, corrected, or explained, in this way: "Though some expressions which were used arguendo in that case (S. v. Jennings), one of which is quoted in S. v. Shade (115 N.C. 757), at this term, may have been misleading, the only point really settled was that where one steps up stealthily behind another and stabs him without warning, it is as much an assault committed `in a secret manner' as where one lies in ambush and shoots another." In the subsequent case of S. v. Harris, 120 N.C. 577, 579, the Court, after referring to the Jennings and Patton cases, holds that the assault is a secret one, within the meaning of the statute, "if it is made from behind, and in such a manner as to prevent the prosecutor from knowing who his assailant is, and that the blow is about to be stricken," and this, no doubt, was intended to be the ruling in the Jennings case, and it is so explained, as we have said, in the Patton *Page 793 
case. In the still more recent case of S. v. King, 120 N.C. 612, it was said that the statute under which the defendant was (738) indicted is highly penal and must be strictly construed. "This Court," it was further said, "held that an assault cannot be said to have been made in a secret manner, except where the person assaulted is unconscious of the presence as well as of the purpose of his adversary," citing S. v. Gunter, 116 N.C. 1068, where Justice Avery, who wrote the opinion in the Jennings case, adopts the rule of the Patton case, in which he had corrected what was stated in theJennings case. But, without further attempting any comment on theJennings case, as originally written, and as afterwards explained and limited, we are sure that in this case, under the rule as stated in the Patton, King, and Gunter decisions, there is ample evidence of a secret assault, even under the restricted principle of the last three cases, and that the charge of the court, based thereon, was in every respect correct. We might go further and hold that here there was evidence of waylaying, or of the appellant's actually concealing himself, by lurking under cover of darkness in the rear of the Stephens house, with the intent and with the premeditated purpose of attacking the prosecuting witness, J. W. Cole, covertly and stealthily, without any warning of his presence, and with a suddenness which deprived Cole of all opportunity to defend himself against the threatened and deadly assault. He had no time even to raise his pistol in defense of himself. The defendants were waiting in the dark for him, as much concealed as if they had been hidden in ambush, prepared to slay without a moment's warning to their victim, who was thus unexpectedly confronted by this hitherto unseen peril. J. W. Cole describes the situation in such way as to show conclusively, if his testimony was truthful, that he was so surprised that he was instantly rendered helpless because he did not know of the presence of the defendants behind the house, as they were hidden by the darkness. As was said, "they loomed up before him" with a suddenness of an apparition; and he first saw them when the gun flashed. It was too late then for any defense, as there was no time for thought. He was on his way to the back door of the house, expecting to enter the house there, and not to meet with the defendant, armed with a deadly weapon and fully prepared to kill any one who had come to take him, and who had avowed, against the protest and entreaty of others not to pursue that course, that the officers should not arrest him, and that the first man who attempted to do so would have his head shot off. This case is very much like that of S. v.Knotts, 168 N.C. 173, for there the officers were searching for the defendants, "who were concealed in the darkness behind a house, *Page 794 
when they opened fire, and Moore (one of the policemen) fell at the first shot, before he knew they were there, or had any opportunity to defend himself. This case falls obviously within the intent (739) and spirit of the statute, and also within its very letter. The attack was made under the cover of darkness and the defendants were as effectually concealed as if they had been laying in wait in an ambush." We held that there was evidence of a secret assault under the statute. To the same effect is S. v. Whitfield,153 N.C. 627, which also resembles this case in several respects. The defendants there had dynamited the house of one Everett Hamilton, who, as a detective for the chief of police, had reported them for selling liquor. It was held that the evidence was sufficient to be submitted to the jury, upon the indictment for a secret assault. We have dwelt upon this exception, because the learned counsel placed the stress of his able argument upon it, and pressed it with great confidence, but it cannot be sustained, as we regard the evidence in this record as stronger than was that in the other cases we have cited.
The testimony as to the violation of the statute against the sale of liquor was harmless. There was not, and could not be, any controversy as to the defendant's guilt in this respect. He was caught "red-handed," as it is sometimes expressed, or flagrante delicto. He ran into the officers, so to speak, loaded with the forbidden goods. He voluntarily admitted his guilt, and his repetition of it can hardly be considered, under the circumstances of this case, as any more than harmless surplusage. They left the automobile and fled from the officers, because of their manifest guilt. We are not implying that the evidence was not, in itself, competent. It is not necessary to go beyond what we have said.
The prayers for instructions were given so far as they were proper. The first request was properly refused, as there was evidence of guilt. In regard to the second and third requests, as to self-defense, the judge explained fully, clearly, and correctly what would render Bridges faultless and entitle him to his right of self-defense. He then charged the jury as follows: "If, then, you find from the evidence that Bridges was himself without fault, and you further find from the evidence that the prosecuting witness, J. W. Cole, went to the home of Stephens for the purpose of arresting the defendants for a misdemeanor previously committed, and that he did not have at that time in his possession a warrant for the arrest of the defendants, and you further find that the witness Cole, after going to the house, intentionally and purposely pointed his pistol at the defendant Bridges, and that Bridges, under these circumstances, *Page 795 
apprehended and had reasonable grounds to apprehend either that he was in danger of great bodily harm, or in danger of the loss of his life, you will then find that he had a legal right to use such force as was necessary, or apparently necessary, to repel the assault of Cole and protect himself, and the necessity of doing so was real or apparent; this is to be determined by the jury, viewing all the facts and circumstances as they reasonably appeared to Bridges at the time the shot was fired." The charge of the court was (740) carefully prepared and covered every question in the case upon which instruction by the judge to the jury was necessary, and was free from any error. We might go further and say that it was exceedingly fair to the defendant, and, perhaps, was more lenient to him than he had any right to expect. It was, at least, not more unfavorable to him than it should have been, and did not fail to give him the benefit of every principle in law to which he was entitled. The doctrine of self-defense was liberally stated in his behalf in view of the facts and circumstances of the case.
Finding no error, after a patient and careful investigation of the record, we affirm the judgment, and it will be so certified.
No error.
P. C. The motion for a certiorari is denied. The pistol was competent evidence for the jury to consider, and it was before them, but we do not pass upon facts, and it would not aid us at all in deciding the case.
Motion denied.
Cited: S. v. Oxendine, 187 N.C. 663; S. v. Newsome, 195 N.C. 559; S.v. McLamb, 203 N.C. 448; S. v. Cogdale, 227 N.C. 62; S. v. Anderson,230 N.C. 55; S. v. Surles, 230 N.C. 277.