Ruffín, C. J.
 

 The indictment is for an assault and battery on Joseph A. Worth, and contains two counts— one of which is said to have been with the intent to kill and murder. The evidence was, that several persons, Archibald Honeycut was one, formed a partnership for gold mining at a place called Gold Hill, and that Honey-cut was the managing partner, and occupied a small house on the premises belonging to the company, which was called the office; in which he slept and kept the books, papers and gold and other valuables belonging to the con
 
 *506
 
 cern. In September, 1851, Worth purchased the interest of Honeycut and of some of the other partners, and, by the appointment of most of the company, Worth after-wards became the manager instead of Honeycut, and took possession of the office, books, &c., and at the same time requested Honeycut to assist him in the management, and he agreed to do so, arid by Worth’s permission, he kept his bed and clothing in the office, as he had done before? and there Worth did the business of the company. There-had Keen some difference between Worth and Boyden, and, at the request of the former, Honeycut told the latter, in the early part of the day of November 11, 1851, that Worth wished him not to come to the office: at the same time saying, that he, Honeycut, had ono objection to his coming, and inviting him to come that night; to which Boyden replied that he would, and bring his fiddle along and have a tune. Boyden, however, went to the office in the afternoon, before the business hours closed, and without his fiddle, and, at 5 o’clock, Worth went to the office, to weigh and enter the company’s gold for the day. Upon entering and seeing Boyden there with Honeycut, Worth ordered him to leave: and Boyden said he would do so. if Honeycut said so, and. also that he -would leave, if Worth would go with him. The statement of Worth was, that, when he ordered Boyden to leave the house, he stated his reason to be, that he had circulated false reports against him, and that Boyden rose from a seat near the fire and went towards the door, which was six or eight feet from Worth, walking backwards and keeping his face towards Worth, and, while he was so retreating, the language before mentioned and other angry words passed between them. That upon Boyden’s reaching the door, in reply to something Worth called him a liar, and Boyden retorted, that Worth was a damned liar, and at the same time Boy-den drew a pistol from his coat pocket of the kind Colt’s
 
 *507
 
 •revolvers, and presented it at Worth, and that he, Worth, discovered that the instrument was a pistol, and as he believed his life in danger, and he had no way for retreat, he made a spring towards Boyden, and struck him a blow with his fist, which hacked Boyden around and he fell out of the door upon the piazza, and almost instantaneously the pistol was fired, and the ball passed very near him, Worth, and that he then pressed on Boyden, who continued to present the pistol, and bursted three caps, and fired twice more at the witness, but only one ball hit him and that wounded his finger. Honeycut stated on this part of the case, that, after the lie had been given on both sides, and Boyden had got to the door, he saw Worth advance, but did not look at Boyden at that time, and did not know whether he drew the pistol before Worth had moved — that the blow from Worth preceded the report of the pistol, and that Boyden was knocked down from the door to the porch, and that then he, the witness, heard the firings of the pistol
 

 Some objections were made to the admission of the the deed, under which title was set up to the premises by Worth and the company, for defects in the probate and registration. But it is not necessary to set them out, as the matter is deemed wholly immaterial; since the company and Worth, as manager, were in the peaceful occupation of the house, in which the affray occurred, according to the evidence, and finding of the jury. The Court charged the jury, that, if they believed that Worth, as •managing partner of the company, occupied the office for the purpose of the business of the company, and that Honeycut remained there under Worth and by his permission, for the purpose of assisting him, then the possession of the house was in the company or Worth, and that Worth had a right to order Boyden out of the house, even if he had been invited thex-e by Honeycut, and Boyden was bound to go out, and that, if Boden, when he got to
 
 *508
 
 the door of the room, presented the pistol at Worth with the intention to shoot him, and Worth, on seeing that, apprehended that his life was in danger, then Worth was justified in giving Boyden a blow, as the means of preventing great bodily injury to himself, and that, if Boyden, when he thus presented the pistol to fire and kill Worth, and af-terwards upon receiving the blow from Worth, fired with the same intent, they ought to find the defendant guilty of the assault, with the intent to kill and murder, though he actually only wounded Worth’s finger: but that, if he did not intend to kill, he ought to be found guilty only of the other count. The defendant was convicted on both counts, and after a sentence of fine and imprisonment, he appealed to this Court.
 

 Honeyeut had no interest or possession of his own in the house, but was either the guest or servant merely of Worth, in whom as manager or one of the company, the possession was.
 
 State
 
 v
 
 Curtis,
 
 1 Dev. and Bat. 222. There can be no doubt, therefore, that the defendant was guilty of an assault upon stopping at the door when ordered out, and presenting his loaded pistol within eight feet of the prosecutor. The only question, therefore, was whether that act of his and those subsequent constitute an assault with intent to murder or not. It may be premised, that such an assault, though it seems to have been once considered as a felony, is now held to be a misdemeanor only ;■ and although it may be a high misdemeanor, it is not subject to any additional punishment, but only such as, in discretion of the Court, may be inflicted for other misdemeanors at common law. it is not, therefore, seen how it is material to lay the intent to murder, or why, if laid, it does not fall among the
 
 alia enormia
 
 common in pleadings. It is found, however, to have been considered otherwise in former times. The books of precedents give indictments, with counts laying the assault both ways, and in
 
 Rex
 
 v.
 
 Milton,
 
 1 East Pl. C. 411, it was
 
 *509
 
 held, that the party could not be convicted on a count at common law, for any assault with intent to murder, upon evidence, showing that it would be but manslaughter, if death had occurred. In that state of authorities, the Court will not proceed upon a mere impression to the contrary, but assume them to be correct, until at least further investigation. Such an investigation is pot requisite at present, because most clearly, upon this evidence, which the jury finds to be true, the killing, if it had happened, would not have been manslaughter but murder of a wanton character and apparently premeditated. The defend-dant had been forbidden the house by the proprietor, and yet, at the invitation of a servant, he engaged to visit it at night, for the purpose of having music. But, instead of going then, he went at an earlier period, when he might expect to meet the owner of the house, and instead of taking his violin he came secretly and disgracefully armed with a most deadly instrument, a pistol shooting six times, and, upon being ordered out, asked the other party to go with him, and, upon his not doing so, stopped at the door and made an assault by presenting the pistol. If he had then shot the man, it could be nothing less than murder of a most aggravated kind. The blow then given to him does not change the character of the killing, if it had happened during the rencounter that followed, for the blow was given by one exposed to a deadly assault, as the means of saving himself from imminent peril of his life, and the killing would have been the act of the first aggressor, the first assailant, and the wrongdoer throughout. Therefore, supposing it necessary to show, that a killing would have been murder, in order to support this count, the Court holds, that the defendant was properly convicted on it, and that it is accordingly proper, that the sentence should be carried iuto execution.
 

 Pee Curiam. Ordered to be certified accordingly.