STATE v. ELLEN HARRIS.

(Filed 15 June, 1938.)

**1. Criminal Law § 2—**

"Willful," as used in a criminal statute, means something more than an intention to do a thing; it implies the doing of an act purposely and deliberately, without authority or careless whether one has the right to do the act or not, in violation of law.

**2. Carriers § 18b—Evidence held not to show willful violation of provision for segregation of races on bus.**

The evidence disclosed that defendant, a Negro, entered a bus as a passenger, passed several vacant seats in the front of the bus, and took a seat on the last seat on the aisle in the rear immediately in front of the long rear seat in the back of the bus, that thereafter a white passenger got on the bus when all seats were occupied except the seat beside defendant and seats on the long rear seat, that he and the conductor requested defendant to move back to the long rear seat, and that she refused to do so, but offered to leave the bus if her money were refunded. N. C. Code, 3537, provides that Negroes shall occupy the last vacant seat in the aisle nearest the rear, and that the willful violation of the provisions of the statute should constitute a misdemeanor. *Held:* The evidence fails to disclose a willful violation of the provisions of the relative statutes by defendant, and in a prosecution thereunder her motion to nonsuit should have been allowed. N. C. Code, 3536, 3537, 3539 (a).

**3. Statutes § 8—**

Criminal statutes are to be strictly construed.

APPEAL by defendant from *Williams, J.,* and a jury, at March Term, 1938, of DURHAM.　Reversed.

This is a criminal action, tried before his Honor, C. L. Williams, Judge presiding, and a jury, at the March Term, 1938, of the Superior Court of Durham County.　The defendant Ellen Harris was tried upon a warrant charging her with violating C. S., 3536, 3537, and 3539 (a), relating to the seating of white and Negro passengers upon vehicles operated for hire.

The warrant sworn out in the recorder's court of the city of Durham read as follows: "J. B. Harris, being duly sworn, on information, says that Ellen Harris, on or about 12 February, 1938, with force and arms, at and in the county aforesaid, and within Durham County, did unlawfully, maliciously and unlawfully occupy a certain seat in the front part of a bus operated by the Durham Public Service Company, and did then and there fail and refuse to move from said seat when requested to do so by the operator of said bus, against the statute in such case made and provided and against the peace and dignity of the State.　J. B. Harris, Complainant."　Jurat.

The defendant was tried on this warrant in the recorder's court and from a verdict of guilty and judgment appealed to the Superior Court. In the Superior Court the warrant was amended to read as follows: "That the said Ellen Harris did then and there unlawfully and willfully enter and occupy a seat in a bus operated for hire by the Durham Public Service Company, which seat was not the first seat nearest the rear of said bus that was vacant at the time and unoccupied, she, the said Ellen Harris, being a colored person."

The defendant was tried and convicted on the amended warrant. The judgment of the court was a fine of $10.00, plus the cost of the court. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.　The material ones and necessary facts will be considered in the opinion.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Willis for the State.*

*C. J. Gates and Edward R. Avant for defendant.*

CLARKSON, J.　The defendant was convicted and judgment pronounced against her for violating the following statutes construed *in pari materia:*

N. C. Code, 1935 (Michie), sec. 3536: "All street, interurban and suburban railway companies, engaged as common carriers in the transportation of passengers for hire in the State of North Carolina, shall provide and set apart so much of the front portion of each car operated by them as shall be necessary, for occupation by the white passengers

therein, and shall likewise provide and set apart so much of the rear part of such car as shall be necessary, for occupation by the colored passengers therein, and shall require as far as practicable the white and colored passengers to occupy the respective parts of such car so set apart for each of them. The provisions of this section shall not apply to nurses or attendants of children or of the sick or infirm of a different race, while in attendance upon such children or such sick or infirm persons. Any officer, agent or other employee of any street railway company who shall willfully violate the provisions of this section shall be guilty of a misdemeanor, and upon conviction shall be fined or imprisoned in the discretion of the court."

Section 3537: "Any white person entering a street-car for the purpose of becoming a passenger therein shall, if necessary to carry out the purposes of the preceding section, occupy the first vacant seat or unoccupied space in the aisle nearest the front of the car, and any colored person entering such car for a like purpose shall occupy the first vacant seat or unoccupied space in the aisle nearest the rear end of the car; Provided, however, that no contiguous seats on the same bench shall be occupied by white and colored passengers at the same time unless and until all the other seats in the car shall be occupied. Any person willfully violating the provisions of this section shall be guilty of a misdemeanor, and upon conviction shall be fined not more than fifty dollars or imprisoned not exceeding thirty days. He may also be ejected from the car by the conductor and other agent or agents charged with the operation of such car, who are hereby vested with police powers to carry out the provisions of this action."

Section 3539 (a): "The provisions of sections 3536-3539 are hereby extended to motor buses operated in the urban, interurban or suburban transportation of passengers for hire, and to the operator or operators thereof, and the agents, servants, and employees of such operators."

At the close of the State's evidence, the defendant in the court below made a motion for judgment as in case of nonsuit. C. S., 4643. This motion was overruled and in this we think there was error.

Section 3536, *supra,* was passed by the General Assembly in 1907 and 1909, and section 3537 was passed in 1907. In reference to street cars, etc., the law has been in force for over 30 years and no case has ever come to this Court. In 1933 the street car, etc., provision was extended to motor buses operating in the State.

In *Corporation Commission v. Interracial Com.,* 198 N. C., 317 (320), is the following: "It has long been the settled policy of this State, promulgated through the legislative branch of the government, to have separation or segregation of the white and Negro races with equal accommodations, in the public institutions of the State, and by public service corporations. Separate schools for the white race and Negro

race; separate asylums and other institutions for the afflicted Negroes in the State, separate reformatories, etc. In the cities and towns that have them, separate parks, separate libraries, etc. By public service corporations, separation and segregation on railroad trains, steamboats, street cars, separation and segregation in the railroad and steamboat companies' passenger stations. *S. v. Williams,* 186 N. C., 627. In recent years, since the construction of hard-surfaced and dependable roads in the State, the bus line has become one of the most important carriers of passengers. We think the Corporation Commission has full and plenary power, under the present law, to see to it that the bus lines provide separate accommodations for white and Negro passengers, and separate bus station facilities. This matter is left largely to the discretion of the Corporation Commission as to the manner and method. As to separate apartments in the buses or separate buses run for the accommodation of the white and Negro races, this is a matter for the Corporation Commission to determine, taking into consideration the terminals of the lines, population, economical conditions. The matter should be worked out in good faith by the Corporation Commission, taking all things into consideration, for the best welfare of the white and Negro races, so that justice can be accomplished in this racial condition that exists among us—a duty that the State owes to all of its citizens." This case was annotated in the American Law Reports, 66 A. L. R., p. 1197.

In the present case the bus carried white and Negro passengers. The bus seated 25 persons. It had an aisle down the center, with seats (two persons each) on either side of the aisle. Across the rear was a long seat sufficient to seat five persons. The defendant, when she entered the bus, paid her fare at the front and immediately went down the aisle to the rear of the bus and took a seat on the last seat for two persons on the aisle—the seat in front of the rear seat which would accommodate five persons. Later Mr. and Mrs. R. B. Jones came in the bus. Mrs. Jones took a vacant seat—the only vacant seat left except the seat beside defendant and the long seat across the rear of the bus. Mr. Jones requested the defendant to move back to the long seat in the rear, where there was a vacant seat, so that he might occupy the seat which the defendant had. This she refused to do, although requested to do so by Mr. Jones and the bus driver, but stated that she would get off the bus if her fare was refunded.

It will be noted that the act, section 3537, reads: "Any white person entering a street car for the purpose of becoming a passenger therein shall, if necessary to carry out the purposes of the preceding section, occupy the first vacant seat or unoccupied space in the aisle nearest the front of the car, and any colored person entering such car for like purpose shall occupy the first vacant seat or unoccupied space in the *aisle* nearest the rear end of the car," etc.

STATE *v.* HARRIS.

Mr. Jones, under the proviso to section 3537, had his right: "Provided, however, that no contiguous seats on the same bench shall be occupied by white and colored passengers at the same time unless or until all of the other seats in the car shall be occupied." The act provides, "Any person willfully violating the provisions of this section shall be guilty of a misdemeanor," etc.

In *S. v. Whitener*, 93 N. C., 590 (592), *Ashe, J.*, says: "Conceding it to have been unlawful, it does not follow that it was *willful*. The word 'willful,' used in a statute creating a criminal offense, means something more than an intention to do a thing. It implies the doing of the act purposely and deliberately, indicating a purpose to do it, without authority—careless whether he has the right or not—in violation of law, and it is this which makes the criminal intent, without which one cannot be brought within the meaning of a criminal statute." *S. v. Cook*, 207 N. C., 261; *S. v. Coal Co.*, 210 N. C., 742 (754).

The defendant, when she entered the bus, walked down the aisle passing some four seats on either side of the aisle and took the fifth seat in front of the five-passenger seat across the rear of the bus. Jones testified: "She was on the bus when I got on. She was seated on the last seat except the long seat in the back. When I got on the bus there was room for one passenger besides my wife excepting the long seat at the back. When we entered the bus my wife took a seat about middle way up, which left only the long seat close to the rear and then the half seat beside the defendant. There was room for me to sit down there. There was no available seat across the aisle from where the defendant was sitting."

Criminal statutes are to be construed strictly. Under the facts and circumstances of this case, we do not think the defendant intended to willfully violate the provisions of this act.

The attorneys for the defense in their argument commended the act as one to bring peace between the races. North Carolina's policy in regard to the Negro is segregation and separation with justice, under the Constitution. It has been the means of promoting a friendly relationship and to a great extent brought peace and good will between the sensible elements of the races in this State. This question of separation and segregation was settled long ago.

"And Abram said unto Lot, Let there be no strife, I pray thee, between me and thee, and between my herdmen and thy herdmen; for we be brethren. Is not the whole land before thee? Separate thyself, I pray thee, from me; if thou wilt take the left hand, then I will go to the right; or if thou depart to the right hand, then I will go to the left."—Genesis, ch. 13, vs. 8, 9.

For the reasons given, the judgment of the court below is

Reversed.