STATE v. ROSCOE SURLES.

(Filed 20 April, 1949.)

**1. Criminal Law § 52a (1)—**

Upon defendant's motion to nonsuit, the evidence must be considered in the light most favorable to the prosecution.

**2. Burglary § 11—**

The State's evidence tended to show that defendant's estranged wife went to her father's home for protection and that her father furnished her a house on his farm, that defendant went to this house at nighttime, went

STATE *v.* SURLES.

to a bedroom window, aroused his wife and threatened to kill her if she did not let him in, cut the screen window from top to bottom and finally entered the house through the back door, and left when he found that his wife had fled. *Held:* The evidence was sufficient to overrule defendant's motion to nonsuit in a prosecution for burglary.

**3. Burglary § 13b—**

In a prosecution for burglary in the first degree, it is permissible for the jury to convict the defendant of an attempt to commit burglary in the second degree. G.S. 14-51, G.S. 15-170, G.S. 15-171.

**4. Criminal Law § 2—**

An attempt to commit a crime is an act done with intent to commit that crime, carried beyond the mere preparation to commit it, but falling short of its actual commission.

**5. Criminal Law § 60b—**

An attempt to commit burglary constitutes a felony and is punishable by imprisonment in the State's Prison for a term not in excess of ten years, G.S. 14-3, since it is an infamous offense or done in secrecy and malice, or both, within the purview of the statute.

**6. Criminal Law § 11—**

Infamous offenses within the purview of G.S. 14-3, which prescribes that misdemeanors which are infamous or done in secrecy and malice shall be felonies, are those involving an act of depravity or of moral turpitude.

ERVIN, J., dissenting.

APPEAL by defendant from *Williams, J.,* December Term, 1948, of JOHNSTON.

Criminal prosecution on indictment charging the defendant with burglarizing the dwelling house of his estranged wife, Mrs. Estelle Surles, on the night of 25 August, 1948, with intent then and there to murder his wife, she being present at the time occupying the dwelling.

The record discloses that the prosecutrix and the defendant were married in 1935 and lived peaceably together until 1941 or 1942, when the defendant started working at Fort Bragg as a painter and began drinking whiskey. His drinking increased and his abusive conduct towards his wife became progressively worse. He assaulted her on numerous occasions, striking her with his fists, pulling her hair, cursing her and threatening to kill her and actually firing a gun in the house on two occasions.

Finally, in order to escape from these intolerable conditions, the prosecutrix fled to her sister's home, taking her children with her. The defendant followed; a warrant was obtained for his arrest and he was put under a suspended sentence for two years.

On promise of better treatment, the prosecutrix tried to live with the defendant again. This proved futile and of short duration. In fear for

her life, the prosecuting witness and her children went to her father's home for protection.  He provided a home for her in a house on his farm across the road from his own home.  Even here the defendant continued his molestation.

On the night of 25 August, 1948, around the hour of 10:00 p.m., the defendant came to the bedroom window of the dwelling house provided for his wife by her father and aroused the prosecutrix and her children from their sleep.  He had been drinking, and the prosecuting witness told him to go away, but he threatened to cut her "G... d... head off" if she did not open the door.  Tommy Johnson, who was traveling in the same taxi with the defendant and waiting for him, came to the window and tried to persuade the defendant from further molesting his wife, and said to him "put that knife in your pocket."  The defendant told him to go back to the car or "he would cut his G... d... head off."

The defendant started cutting on the screen window.  The prosecuting witness, fearing that he was coming into the house, then fled from her home, going through the back door, closing the screen door behind her, and sought refuge in her father's house.  The defendant later said to Jack Tart, "I ripped the screen open with an old file or plow sweep lying on the window-sill."

The defendant entered the house through the back door, and when he found that his wife was not in the house he left and went back to the waiting taxi.  The screen was cut from bottom to top, large enough for him to crawl through.

The defendant took the stand in his own behalf and admitted most of the State's evidence.  He denied entering the house, however, after his wife had fled, but as to this he was contradicted by his little daughter. He attributed his conduct to strong drink and tippling.

Verdict: Guilty of an attempt to commit burglary in the second degree.

Judgment: Imprisonment in the State's Prison for a term of ten years. (This judgment rendered under G.S. 14-3.)

The defendant appeals, assigning errors, in that (1) the court overruled his motion for judgment as in case of nonsuit, and (2) imposed an excessive sentence.

*Attorney-General McMullan and Assistant Attorney-General Rhodes for the State.*

*C. C. Canaday and E. J. Wellons for defendant.*

STACY, C. J.  We are here called upon to say, first, whether the case survives the demurrers, and, second, whether the verdict supports the judgment.

1. Considering the evidence in its most favorable light for the prosecution, the accepted position on motion to nonsuit, we agree with the trial court that the inferences are such as to require the submission of the evidence to the jury.

Burglary is a common-law offense. *S. v. Mumford,* 227 N.C. 132, 41 S.E. 2d 201. It consists of the felonious breaking and entering of the dwelling-house or sleeping apartment, of another, in the nighttime, with intent to commit a felony therein, whether such intent be executed or not. *S. v. Allen,* 186 N.C. 302, 119 S.E. 504. It was, and still is, among the few capital crimes, if not the only one, which may be committed without the execution of the felonious intent. The purpose of the law was and is to protect the habitation of men, where they repose and sleep, from meditated harm. The offense is now by statute, G.S. 14-51, divided into two degrees, first and second, depending upon the actual occupancy of the dwelling-house or sleeping apartment at the time of the commission of the crime.

It is further provided by G.S. 15-171 that upon a charge of burglary in the first degree, the jury, upon the finding of facts sufficient to constitute burglary in the first degree, may elect to render a verdict of guilty of burglary in the second degree, if they deem it proper so to do, and the judge is required so to instruct the jury in his charge. *S. v. McLean,* 224 N.C. 704, 32 S.E. 2d 227.

It is also provided by G.S. 15-170, that upon the trial of any indictment the defendant may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime. It was permissible, therefore, for the jury, under the indictment and the evidence, to convict the defendant of an attempt to commit burglary in the second degree.

An attempt to commit a crime is an act done with intent to commit that crime, carried beyond mere preparation to commit it, but falling short of its actual commission. *S. v. Parker,* 224 N.C. 524, 31 S.E. 2d 531; *S. v. Addor,* 183 N.C. 687, 110 S.E. 650, 22 A.L.R. 219; *S. v. Hewett,* 158 N.C. 627, 74 S.E. 356; *S. v. Hefner,* 129 N.C. 548, 40 S.E. 2; *S. v. Colvin,* 90 N.C. 718; 16 C.J. 113. "An indictable attempt, therefore, consists of two important elements: (1) an intent to commit the crime, and (2) a direct ineffectual act done towards its commission." 14 Am. Jur. 813; *S. v. Batson,* 220 N.C. 411, 17 S.E. 2d 511, 139 A.L.R. 614.

2. The defendant contends, however, that as he was convicted only of a misdemeanor, he cannot be punished by imprisonment in the State's Prison, according to the statutory provision in such cases. G.S. 14-1.

It is conceded that an attempt to commit burglary was a misdemeanor at common law. Is it an "infamous" offense, or is it one "done in secrecy and malice," or is it an offense committed "with deceit and intent to defraud"? If it fall within any one of these categories, it is pronounced a felony by G.S. 14-3, and punishable as prescribed therein. Otherwise, it is still punishable as at common law. The present judgment was entered pursuant to this statute, with specific reference thereto.

In *S. v. Spivey,* 213 N.C. 45, 195 S.E. 1, it was held that an attempt to commit buggery was an infamous offense. And in *S. v. Ritter,* 199 N.C. 116, 164 S.E. 62, it is said that a conspiracy to commit murder is an offense done in secrecy and malice. Obliquely accordant: *S. v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686. The soundness of these decisions is now questioned.

A felonious intent or malice is a necessary ingredient of burglary, and it is requisite that the crime be committed in the nighttime. *S. v. Allen,* 186 N.C. 302, 119 S.E. 504. To hold that an attempt at burglary is wanting in infamy would seem to adhere to form rather than to substance. Anno. 24 A.L.R. 1002. "Both at common law and by statute, burglary is an infamous crime." *People ex rel. Battista v. Christian,* 227 N.Y.S. 142, affirmed 249 N.Y. 314, 61 A.L.R. 793; 12 C.J.S. 665. If an attempt to commit burglary be not "infamous," what practical significance is to be ascribed to this word in the subject statute? Manifestly, the character of the allowable punishment cannot be the test of its meaning, for the statute applies only where no specific punishment is prescribed. *S. v. Rippy,* 127 N.C. 516, 37 S.E. 148; *United States v. Moreland,* 258 U.S. 433, 67 L. Ed. 700, 24 A.L.R. 992. The purpose of the section is to fix the punishment in such cases.

A statute, which names the punishment for all misdemeanors, where no specific punishment is prescribed, and provides that if the offense be "infamous," it shall be punished as a felony, necessarily refers to the degrading nature of the offense, *McKee v. Wilson,* 87 N.C. 300, and not to the measure of punishment then being set down. It would be a misnomer or misdescription to speak of an infamous misdemeanor, where no specific punishment is prescribed, if it were only intended thereby to designate an offense already subject to infamous punishment. Ordinarily, it is correct to say that an infamous offense is a crime which works infamy in the one who commits it, meaning thereby that it subjects the offender to an infamous punishment. *Gudger v. Penland,* 108 N.C. 593, 13 S.E. 168. But here we are to ascertain what is meant by the designation of an infamous misdemeanor, without specifically prescribed punishment, in a statute appointing the punishment for the offense so designated. "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to

STATE *v.* SURLES.

the circumstances and the time in which it is used"—*Mr. Justice Holmes* in *Towne v. Eisner,* 245 U.S. 418.

The General Assembly evidently had in mind some infamous misdemeanors with unprescribed specific punishments, or else the designation would have been eschewed. An attempt at burglary is certainly an act of depravity; it involves moral turpitude, reveals a heart devoid of social duties and a mind fatally bent on mischief. Anno. 40 A.L.R. 1048; 48 A.L.R. 266; 14 Am. Jur. 757. "What punishments (or offenses) shall be considered as infamous may be affected by the changes of public opinion from one age to another." *Ex Parte Wilson,* 114 U.S. 417, 29 L. Ed. 89. See, also, "Infamous Crime" in Bouvier's Law Dictionary and the use of this phrase in the Fifth Amendment to the Constitution of the United States. It is to be observed, however, that in determining whether a crime be infamous, the state courts exercise an independent judgment, and are not bound by the decisions of the Federal Courts as to the nature in this respect of crimes against the Government. 14 Am. Jur. 756.

It is provided by G.S. 14-55 that the preparation to commit burglary is a felony. In between mere preparation and actual commission lies the crime of attempt, which, if not a felony, undoubtedly arises from an artless omission in the statute. But such omission, if thought to exist, would seem to result only from a labored or strained construction. "The intention of the lawmakers is the law." *S. v. Emery,* 224 N.C. 581, 31 S.E. 2d 858; *S. v. Humphries,* 210 N.C. 406, 186 S.E. 473.

Moreover, the cover of darkness is the full equivalent of secrecy so far as those intended to be harmed is concerned. To strike in the nighttime when the intended victim is disarmed by sleep, is a surreptitious act. Secrecy is implicit in an act which must be done in the nighttime. *S. v. Bridges,* 178 N.C. 733, 101 S.E. 29. The fact that the defendant here made his identity known, while attempting to accomplish his purpose, works no essential change in the nature of his crime, any more than if he had desisted through fear, resistance, or because of detection. *S. v. McDaniel,* 60 N.C. 245.

It follows, therefore, that an attempt to commit burglary comes within the definition of an "infamous" offense as used in the statute, or within the purview of an offense "done in secrecy and malice," either of which makes it a felony. Our previous decisions are in support of either or both denominations.

The verdict and judgment will be upheld.

No error.

ERVIN, J., dissenting: It may be argued with much reason that the Legislature ought to have made an attempt to commit burglary an aggra-

vated felony punishable by as much as ten years' imprisonment in the State's Prison. But since an investigation of this question has left me with an abiding conviction that it has not done so, I am compelled to note my dissent to both the conclusion and the reasoning of the majority of my brethren.

An attempt to commit burglary is undoubtedly an indictable offense at common law. *S. v. Colvin,* 90 N.C. 717. But there is no statute specifying in terms whether it is a felony or a misdemeanor or how it is to be punished. In consequence, the determination of the validity of the judgment of the trial court in this cause necessitates a journey into the history of the law of crimes and punishments. Thus, we are confronted once more by the ever recurring truth that an understanding of the things of the past is a prerequisite to a comprehension of those of the present.

The classification of public offenses into felonies and misdemeanors is of ancient origin. Some early writers put treason into a grade by itself on the ground hinted by *Lord Chief Justice Hale:* "All treason is felony, tho it be more." 1 Hale P. C., page 497.

At common law felonies were crimes which occasioned a forfeiture of the lands or goods of the offender. 14 Am. Jur., Criminal Law, section 13. Besides, capital or other punishment was added to the forfeiture according to the nature of the particular felony. 22 C.J.S., Criminal Law, section 6. All lesser crimes were misdemeanors. 22 C.J.S., Criminal Law, section 7.

Forfeiture for felony, which was the established rule at common law, has had no force in North Carolina since 1778. G.S. 4-1; *White v. Fort,* 10 N.C. 251, 264. From that time down to 1891, the dividing line between felonies and misdemeanors was an arbitrary one, having no reference to punishment. *S. v. Holder,* 153 N.C. 606, 69 S.E. 66. Whether a common law crime was a felony or a misdemeanor was determined by reference to its classification at common law, and whether a statutory offense was a felony or a misdemeanor was dependent upon the designation given it by the Legislature. *S. v. Hill,* 91 N.C. 561; *S. v. Mallett,* 125 N.C. 718, 34 S.E. 651. In line with the familiar principle that a penal statute must be construed strictly in favor of the accused, it was held with consistency during this period that statutory crimes were not felonies unless they were so declared by the Legislature. *S. v. Hill, supra.* After the adoption of the Constitution of 1868, the abolition of whipping and other corporal punishments, and the establishment of the state prison, crimes so denominated by the common law or by the Legislature constituted misdemeanors notwithstanding they may have been made punishable by legislative fiat with imprisonment in the state prison. *S. v. Dewer,* 65 N.C. 572; *S. v. Hill, supra.* Thus, certain grave crimes, such

as forgery and perjury, were misdemeanors.  *S. v. Hyman,* 164 N.C. 411, 79 S.E. 284; *S. v. Mallett, supra.*

In 1891, however, the General Assembly enacted a statute accepting the principle that the grade of an offense is to be determined solely by the penalty which is prescribed for it.  Laws of 1891, C. 205, sec. 1; *S. v. Mallett, supra.*  This statute is now codified as G.S. 14-1 and is in these words: "A felony is a crime which is or may be punishable by either death or imprisonment in the State's prison.  Any other crime is a misdemeanor."  By virtue of this law, public offenses are now classified in North Carolina as follows: (1) All crimes punishable by death or imprisonment in the State prison are felonies; and (2) all crimes not so punishable are misdemeanors.  *S. v. Harwood,* 206 N.C. 87, 173 S.E. 24; *S. v. Myrick,* 202 N.C. 688, 163 S.E. 803; *Jones v. Brinkley,* 174 N.C. 23, 93 S.E. 372; *S. v. Newell,* 172 N.C. 933, 90 S.E. 594; *S. v. Hyman, supra; S. v. Mallett, supra; S. v. Pierce,* 123 N.C. 745, 31 S.E. 847; *S. v. Addington,* 121 N.C. 538, 27 S.E. 988; *S. v. Bloodworth,* 94 N.C. 918.

G.S. 14-1, in and of itself, makes felonies of all offenses specifically punishable by imprisonment in the State prison notwithstanding they may be called misdemeanors by the statutes defining them.  *S. v. Hyman, supra.*

It is apparent, however, that G.S. 14-1, standing alone, offers no solution for our present problem for the reason that there is no statute stating in terms how persons convicted of attempts to commit burglary are to be punished.  For this reason, recourse must be had to G.S. 14-2 and G.S. 14-3, which provide for the punishment of crimes for which no specific sanctions are prescribed by other statutes.

A completed burglary is a felony by virtue of both the common law and the statute dividing it into two degrees.  G.S. 14-51.  At common law, however, an attempt to commit a felony is only a misdemeanor. *S. v. Stephens,* 170 N.C. 745, 87 S.E. 181; *S. v. Boyden,* 35 N.C. 505. In conformity to this rule, an attempt to commit burglary was expressly adjudged to be a misdemeanor in *S. v. Jordan,* 75 N.C. 27, which was handed down in 1876.  This holding has not been overruled or questioned by any subsequent decision.  Furthermore, no statute has been enacted since its rendition declaring an attempt to commit burglary to be a felony. For these reasons, G.S. 14-2 has no bearing on this case.  It applies only where an act is made a felony without the nature of the punishment being specified.  *S. v. Rippy,* 127 N.C. 516, 37 S.E. 148.

This brings us to a consideration of the question of whether the crime under scrutiny has been converted into a felony by G.S. 14-3.  This statute had its genesis as section 120 of chapter 34 of the Revised Code of 1854, which was as follows: "Offenses made misdemeanors by statute,

where a specific punishment is not prescribed, shall be punished as mis-demeanors at common law, but the punishment of the pillory shall be used only for crimes that are infamous or done in secrecy and malice, or done with deceit and intent to defraud." The statute may be found in its varying intervening mutations in these places. Battle's Revisal of 1872-3, c. 32, s. 108; Code of 1883, s. 1097; Revisal of 1905, s. 3293; Consolidated Statutes of 1919, s. 4173; and Public Laws of 1927, c. 1.

It is of utmost significance that historically the statute was designed to provide sanctions for misdemeanors for which specific punishments were not prescribed. The statute applied initially in terms solely to statutory misdemeanors, but in 1905 it was partially rewritten so as to cover "all misdemeanors," without regard to whether they arose at common law or were created by legislative fiat. By unvarying phraseology, the statute has consistently divided all crimes embraced within its provisions into two classes, to wit: (1) Ordinary misdemeanors; and (2) aggravated offenses defined as crimes that are infamous, or done in secrecy and malice, or done with deceit and intent to defraud.

Ordinary misdemeanors falling within the scope of the statute have been punished without variation "as misdemeanors at common law," that is, by fine or imprisonment in the county jail, or both. *S. v. Powell,* 94 N.C. 920; *S. v. McNeill,* 75 N.C. 15. Imprisonment in such case, however, cannot exceed two years. *S. v. Wilson,* 216 N.C. 130, 4 S.E. 2d 440.

The punishment authorized for the aggravated offenses named in the statute now codified as G.S. 14-3 has undergone change. Originally these crimes could be punished corporally. *S. v. Hyman, supra; S. v. Lytle,* 138 N.C. 738, 51 S.E. 66. After the ratification of the Constitution of 1868, however, corporal punishment was abolished by statutes reading as follows: "Every crime or offense whatever, heretofore punishable by the laws of North Carolina when the present Constitution went into effect with public whipping or other corporal punishment, shall hereafter, in lieu of such corporal punishment, be punished by imprisonment in the State's prison, or county jail for not less than four months nor more than ten years." Battle's Revisal, c. 32, s. 29 and s. 108.

Since that time persons committing the aggravated offenses in question have been subject to imprisonment for terms of not less than four months nor more than ten years. In 1883, it was decreed that such offenders should also be fined, but in 1905 the statute was reworded so as to specify that fine and imprisonment should be alternative punishments rather than cumulative sanctions. The Code, s. 1097; Revisal, s. 3293; C.S., s. 4173.

Although perpetrators of such crimes were subject to incarceration in the State prison after the abolition of corporal punishment, the aggra-vated offenses now under examination were called misdemeanors by the

Legislature and retained such grade in law down to 1891, when they were controverted into felonies despite their designation as misdemeanors by the statute declaring all crimes "punishable by either death or imprisonment in the State's prison" to be felonies. G.S. 14-1; *S. v. Howard,* 129 N.C. 584, 40 S.E. 71; *S. v. Mallett, supra.* In 1905, however, these offenses reverted to their oirginal classification of aggravated misdemeanors by virtue of a statutory alteration restricting imprisonment therefor to the county jail. Revisal, s. 3293; C.S., s. 4173; *S. v. Lewis,* 185 N.C. 640, 116 S.E. 259. But they were transformed to the grade of felony a second time in 1927 by an amendment restoring the former provision authorizing confinement of violators in the State prison as well as in the county jail. P.L. 1927, c. 1; *S. v. Harwood, supra.*

Nevertheless, the Legislature permitted these particular crimes to retain the express designation of misdemeanors until 1943 when the statute was restated as G.S. 14-3 in these words: "All misdemeanors, where a specific punishment is not prescribed, shall be punished as misdemeanors at common law; but if the offense be infamous, or done in secrecy and malice, or with deceit and intent to defraud, the offender shall, except when the offense is a conspiracy to commit a misdemeanor, be guilty of a felony and punished by imprisonment in the county jail or State prison for not less than four months nor more than ten years, or shall be fined."

This brings us to a consideration of the question of whether an attempt to commit burglary constitutes an infamous offense, and by reason thereof has been converted from a common law misdemeanor to a felony by G.S. 14-1 and G.S. 14-3.

The majority opinion cites *S. v. Spivey,* 213 N.C. 45, 195 S.E. 1, to sustain the proposition that such is the case. This decision holds that an attempt to commit the abominable and detestable crime against nature is an infamous offense under G.S. 14-3, but it advances no reason whatever from such conclusion and specifies no criterion by which to determine what other crimes are infamous. When *Spivey's case* is considered in the light of the history and purpose of the statute under review, a strong suspicion arises that it was one of those hard cases which form the quicksands of the law, and that the court succumbed to the temptation, which lies in constant wait for the judiciary, to forsake the function of the judge for that of the legislator. Be this as it may, *S. v. Spivey* is entitled to no force as an authority beyond the scope of its own precise adjudication. Certainly, it affords a rather insubstantial base for the present holding of the majority that an offense is infamous within the meaning of G.S. 14-3 if it appears to be of a "degrading nature" when subjected to some undefined and undisclosed test.

Although the term "infamous offense" has seen long service in our organic and statutory law, it is nowhere defined therein. But infamous offenses are not synonymous with felonies historically because "the line between felonies and misdemeanors has never been whether the offense is an infamous one or not." *Jones v. Brinkley, supra.* This observation finds accurate illustration in the statute under scrutiny.

The words "infamous offenses" are not employed in our organic and statutory law in a loose and fluctuating popular sense to signify any infraction of the criminal law which some judge or some segment of society may deem to be shameful or disgraceful. When the General Assembly of 1854 incorporated the words "crimes that are infamous" in the statute now embodied in G.S. 14-3, it chose a term which has a definite and well known meaning at common law. Consequently, it must be presumed that the term is used in the statute in the sense in which it was understood at common law. *Winston v. Beeson,* 135 N.C. 271, 47 S.E. 457, 65 L.R.A. 167.

The common law called certain offenses "infamous on account of the shameful status which resulted to the person convicted of one of this class of crimes." 14 Am. Jur., Criminal Law, section 4. Such a crime was said to work infamy in the person who perpetrated it. *Butler v. Wentworth,* 84 Me. 25, 24 A. 456, 17 L.R.A. 764; *Bell v. Commonwealth,* 167 Va. 526, 189 S.E. 441. For this reason, some writers and codifiers spoke of infamous persons rather than of infamous crimes. 3 Blackstone 363, 370; Revised Code, Index, p. 577.

An infamous offense within the meaning of the common law is one which renders the party convicted thereof incompetent to testify as a witness in a court of justice, or deprives him of his civil and political privileges. 22 C.J.S., Criminal Law, section 3; 14 Am. Jur., Criminal Law, section 4; Wharton's Criminal Law (12th Ed.), section 27; Underhill's Criminal Evidence (4th Ed.), section 378; Wigmore on Evidence (3rd Ed.), section 519, 520; Jones on Evidence in Civil Cases, section 716; *S. v. Valentine,* 29 N.C. 225; *S. v. Candler,* 10 N.C. 393; *Harrison v. State,* 55 Ala. 239; *Baum v. State,* 157 Ind. 282, 61 N.E. 672, 55 L.R.A. 250; *Sutherlin v. Sutherlin,* 27 Ind. App. 301, 61 N.E. 206; *Williams v. United States,* 4 Ind. Terr. 204, 69 S.W. 849; *State v. Clark,* 60 Kan. 450, 56 P. 767; *Garitee v. Bond,* 102 Md. 379, 62 A. 631, 111 Am. S. R. 385, 5 Ann. Cas. 915; *State v. Bixlar,* 62 Md. 354; *O'Connell v. Dow,* 182 Mass. 541, 66 N.E. 788; *State v. Henson,* 66 N.J.L. 601, 50 A. 468; *People v. Pharr,* 4 N. Y. Cr. 545; *Barker v. People,* 20 Johns. (N.Y.) 457; *McCafferty v. Guyer,* 59 Pa. 109; *Barbour v. Commonwealth,* 80 Va. 287.

Intrinsic indications in the Revised Code of 1854, which was enacted by the Legislature in its entirety, make it plain that the lawmakers used

the term "infamous offense" in its common law sense when they enacted the statute in question. For example, section 52 of chapter 34 bears the headnote "Perjured Persons made infamous" and provides that "all persons convicted of perjury or subornation of perjury shall be rendered thereby incapable of giving testimony before any court whatsoever"; and chapter 58 prescribes a procedure for restoration to citizenship of "any person who may have been convicted of an infamous crime whereby the rights of citizenship are forfeited." The last mentioned statute was a general law enacted by the Legislature on account of the provision of Article I, Section IV, Clause 4, of the Amendments to the State Constitution ratified in 1835 forbidding the General Assembly "to pass any private law to restore to the rights of citizenship any person convicted of an infamous crime." Incapacity to testify as a witness on account of crime, which was in force when the statute under scrutiny was adopted, was removed by an act of 1866, which is now embodied in G.S. 8-49. *Ex Parte Harris,* 73 N.C. 65; *S. v. Harston,* 63 N.C. 294. But existing constitutional provisions expressly disqualify for voting and for office-holding persons convicted of treason, or felony, or "any other crime" punishable by imprisonment in the State's prison. N. C. Const., Art. II, Section 11, and Art. VI, Sections 2 and 8.

Conviction of an attempt to commit burglary has never entailed a loss of civil and political privileges in this State. Hence, this crime cannot be an infamous offense under G.S. 14-3 unless its commission in times past excluded its perpetrator from being a witness in a court of justice. Infamous crimes in this sense embraced only treason, felony, and *crimen falsi.* Witmore on Evidence (3rd Ed.), section 520; Wharton's Criminal Evidence (11th Ed.), section 1166; Underhill's Criminal Evidence (4th Ed.), section 378; 58 Am. Jur., Witnesses, section 138; 70 C.J., Witnesses, section 134; *Smith v. State,* 129 Ala. 89, 87 Am. St. Rep. 47; *People v. Sponsler,* 1 Dak. 289, 46 N.W. 459; *People v. Whipple,* 9 Cow. (N.Y.) 707; *People v. Tonybee,* 20 Barb. (N.Y.) 168; *Wick v. Baldwin,* 51 Ohio St. 51, 36 N.E. 671; *Webb v. State,* 29 Ohio St. 351; *United States v. Sims,* 161 F. 1008.

The clearest exposition of this phase of the law is that of Dean Burdick, who says: "In our law, however, some confusion has been caused by applying to the term infamous crimes two meanings, one to describe the punishment inflicted, the other to characterize the crime. Thus, it has been held that an infamous crime is one punishable in the penitentiary with or without hard labor, and that the phrase infamous crime in the federal constitution means any crime punishable by an infamous punishment, such as imprisonment in a penitentiary. Under the statutory definition of felony in some states, this would make infamous crimes synonymous with felonies. At common law, however, an infamous crime

is one whose commission brings infamy upon a convicted person, rendering him unfit and incompetent to testify as a witness, such crimes being treason, felony, and *crimen falsi.* This latter term means any offense involving corrupt deceit, or falsehood by which the public administration of justice may be impeded, such as perjury, subornation of perjury, forgery, bribery of witnesses, conspiracy in procuring non-attendance of witnesses, barratry, counterfeiting, cheating by false weights or measures, and conspiring to accuse an innocent person of crime. It will be observed that *crimen falsi* means, therefore, in our law practically the same as it meant in the Roman Law from which source it was, of course, derived. To the offenses which are infamous at common law other felonies have been added by statute, such as embezzlement and false pretenses, but the offenses included in *crimen falsi* are misdemeanors at common law which shows that the term infamous crime is broader than felonies." Burdick : Law of Crimes, section 87.

Thus, it clearly appears that an attempt to commit burglary was not one of the crimes whose commission rendered the convicted party incompetent as a witness.

Since an attempt to commit burglary is not an infamous offense in a legal sense, it has not been converted from a common law misdemeanor to a felony by G.S. 14-1 and G.S. 14-3 unless it can be said to be an offense "done in secrecy and malice, or with deceit and intent to defraud."

There is neither allegation nor evidence in the case at bar to sustain the theory that the precise offense of which the defendant has been convicted was "done in secrecy and malice, or with deceit and intent to defraud." The converse is true because the allegation is that his intent was to commit murder, and the evidence is that his act was done openly in the presence of witnesses and that he acquainted his intended victim with both his presence and his purpose. Hence, the conclusion of the majority that the crime in question was done "in secrecy" as well as in malice is in irreconcilable conflict with the record if the question whether an offense is "done in secrecy and malice" within the purview of the statute be one of fact for the jury rather than one of law for the judge.

But the problem is a legal one. When the Legislature used the words "done in secrecy and malice, or with deceit and intent to defraud," to describe the second and third classes of aggravated offenses included in the statute now codified as G.S. 14-3, its manifest purpose was to describe offenses in which either secrecy and malice, or the employment of deceit with intent to defraud are elements necessary to their criminality as defined by law.

Intrinsic indications of this legislative intent appear in various provisions of chapter 34 of the Revised Code of 1854 defining specific crimes, and this construction of the statute is supported explicitly in *S. v. Powell,*

94 N.C. 920, and implicitly in these decisions: *S. v. Perry,* 225 N.C. 174, 33 S.E. 2d 918; *S. v. Tyson,* 223 N.C. 492, 27 S.E. 2d 113; *S. v. Harwood, supra; S. v. Moore,* 204 N.C. 545, 168 S.E. 842; *S. v. Talley,* 200 N.C. 46, 156 S.E. 142; *S. v. Lewis, supra; S. v. Smith,* 174 N.C. 804, 93 S.E. 910; *S. v. Driver,* 78 N.C. 423; *S. v. McNeill,* 75 N.C. 15. It harmonizes with the interpretation placed upon the words of G.S. 15-1 exempting "malicious misdemeanors" from the bar of the two-year statute of limitations applicable to misdemeanors in general. *S. v. Claywell,* 98 N.C. 731, 3 S.E. 920; *S. v. Frisbee,* 142 N.C. 671, 55 S.E. 722. This Court declared in the case last cited that "when . . . the Legislature used the words 'other malicious misdemeanors,' which immediately follow the words 'malicious mischief,' it evidently intended to describe offenses of which malice is a necessary ingredient to constitute the criminal act, as in the case of malicious mischief, and it was not the purpose to include within the exception from the operation of that section such offenses as would be misdemeanors, even in the absence of malice, and when malice, if present, would be only a circumstance of aggravation, which the Court might consider in imposing the punishment." Besides, this conclusion coincides with the fundamental rule of statutory construction that in a doubtful case penal statutes are to be construed strictly against the State and in favor of the citizen. *S. v. Jordon,* 227 N.C. 579, 42 S.E. 2d 674; *In re Parker,* 225 N.C. 369, 35 S.E. 2d 169; *S. v. Campbell,* 223 N.C. 828, 28 S.E. 2d 499; *S. v. Ingle,* 214 N.C. 276, 199 S.E. 10; *S. v. Harris,* 213 N.C. 758, 197 S.E. 594; *S. v. Humphries,* 210 N.C. 406, 186 S.E. 473.

Under the statute thus construed, an attempt to commit burglary is a misdemeanor for its necessary elements as defined by law do not include either secrecy and malice or the employment of deceit with intent to defraud. Since I am convinced that this interpretation is consonant with the legislative intent, I am of the opinion that the defendant has been convicted of a misdemeanor, which is punishable as a misdemeanor at common law; that the judgment rendered on his conviction is invalid both in respect to the place of punishment designated and the extent of punishment assessed; and that the exception to the judgment ought to be sustained.

The decision of the majority puts a diametrically opposite construction upon this phase of the statute which, in my judgment, not only runs counter to the legislative purpose, but also produces unpropitious consequences. The opinion of the majority has the effect of extending the statute by interpretation to all crimes for which no specific punishments are prescribed irrespective of their essential legal elements or inherent moral qualities in cases where they are, in fact, "done in secrecy and malice, or with deceit and intent to defraud." Under this construction,

crimes which no man can number will in particular instances be transformed from insignificant misdemeanors to aggravated felonies entailing a loss of citizenship to offenders, whose hearts are free of moral turpitude, simply because of the relatively unimportant circumstance that they are "done in secrecy and malice." It must not be forgotten that the legal meaning of the word "malice" is milder than its popular sense, signifying as it does the mere "state of mind of a person who does a wrongful act intentionally or willfully, and without legal justification or excuse." 22 C.J.S., Criminal Law, section 31.

I have not overlooked *S. v. Ritter,* 199 N.C. 116, 164 S.E. 62, holding that a conspiracy to commit murder is an aggravated offense because "done in secrecy and malice," and *S. v. Mallett, supra; S. v. Howard,* 129 N.C. 584, 40 S.E. 71; *S. v. Lewis, supra; S. v. Shipman,* 202 N.C. 518, 163 S.E. 657; *S. v. Lea,* 203 N.C. 13, 164 S.E. 737; *S. v. Dale,* 218 N.C. 625, 12 S.E. 2d 556; and *S. v. Davenport,* 227 N.C. 475, 42 S.E. 2d 686, adjudging either expressly or impliedly that conspiracies to cheat and defraud are likewise aggravated offenses because "done with deceit and intent to defraud." These decisions apply only to conspiracies and are not controlling here. Moreover, it is worthy of observation that any possible question of whether the proper construction of the statute now codified as G.S. 14-3 in respect to conspiracies is to be found in these cases or in previous decisions, such as *S. v. Jackson,* 82 N.C. 565, and *S. v. Turner,* 119 N.C. 841, 25 S.E. 810, holding either explicitly or implicitly that a conspiracy is a misdemeanor even in those cases where its object is the commission of a felony, apparently became moot in 1943 when the General Assembly re-enacted the law with an amendment providing, in substance, that a conspiracy to commit a misdemeanor should not be converted into a felony by the statute. It seems that the Legislature thereby inferentially adopted as the law of the State the dictum of the late *Justice Schenck* in *S. v. Abernethy,* 220 N.C. 226, 17 S.E. 2d 25, that "a conspiracy to commit a felony is a felony and a conspiracy to commit a misdemeanor is a misdemeanor."