STATE OF NORTH CAROLINA v. PATRICK ALAN KEEN

No. 7428SC965

(Filed 7 May 1975)

**1. Criminal Law § 121— solicitation to commit murder — entrapment issue**
In a prosecution of defendant for soliciting two persons to kill his wife, the trial court properly submitted defendant's contentions concerning entrapment to the jury and gave instructions which were correct in law and manifestly fair to defendant.

**2. Homicide § 21— solicitation to commit murder — completion of crime**
In a prosecution of defendant for soliciting two persons to kill his wife, defendant's argument that there could have been no completion of the crime since all parties with whom he spoke were connected with law enforcement is without merit since the crime of solicitation to commit a felony is complete with the solicitation even though there could never have been an acquiescence in the scheme by the one solicited.

**3. Criminal Law § 138— solicitation to commit murder — severity of sentence**
Sentence of confinement for not less than five nor more than ten years imposed in a prosecution for solicitation to commit murder did not exceed that authorized by law. G.S. 14-3(b).

ON *certiorari* to review trial before *Friday, Judge*. Judgment entered 11 April 1974 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 11 February 1975.

Defendant was charged in a bill of indictment with soliciting Blaine Bacon and Ben Wade to kill and murder Susan Page Keen, wife of defendant.

Evidence for the State is summarized as follows. Blaine Bacon first saw Patrick Alan Keen, the defendant, on the afternoon of 12 September 1973. Defendant brought his Volkswagen bus into Bacon's garage to be repaired. Bacon examined the vehicle, told defendant that he did not have the necessary parts and suggested that defendant return the next day. Defendant returned the next day and Bacon proceeded to repair the vehicle. Defendant asked Bacon if he knew "someone with few scruples and in need of some money." Bacon asked, "how few scruples and how much money." Defendant replied that he wanted his wife killed so that he could collect the proceeds from an insurance policy in her name. He agreed to pay Bacon $5,000.00 from the proceeds of the policy.

Defendant told Bacon the death of his wife must occur before 1 October since that was the expiration date of her life insurance policy. At the close of the conversation Bacon asked defendant to give him a few days to consider the proposition and to contact him the following Monday.

Defendant had purchased a $100,000.00 policy on his wife's life dated 1 July 1973, and was the named beneficiary. Defendant paid the quarterly premium for the months of July, August and September but did not pay the premium due 1 October 1973, and the policy lapsed on 31 October.

Bacon immediately attempted to contact several law enforcement officers with whom he had become acquainted when he had worked as an informer or undercover agent. He finally reached a U. S. Treasury agent and informed him of what defendant had said. The agent advised him to keep in contact. Bacon's actions thereafter were generally directed by law enforcement officers. On Friday, defendant again visited Bacon, told him of the urgency of the time factor and sought a definte answer as to whether Bacon would kill Mrs. Keen. Defendant informed Bacon that she was in Fayetteville and said he could go there and "blow her brains out." Bacon again told defendant to wait until Monday for an answer.

State v. Keen

The following Monday afternoon, defendant met Bacon at his garage. Ben Wade, an agent of the State Bureau of Investigation, was concealed in Bacon's rear office so that he could overhear their conversation. At this meeting defendant again stressed the importance of time and asked Bacon when he was going to kill Mrs. Keen. Bacon replied that accidents were not his style but that he had discussed the matter with a friend who was a professional killer. Bacon told defendant that his friend was an expert at making deaths appear accidental and that he would be in Asheville the following Friday. On Wednesday defendant visited Bacon again. The two established Friday morning as their meeting time, and defendant was asked to bring a picture of his wife.

On that Friday the two men drove in defendant's van to a motel in Asheville. They went to a room where Wade, posing as a professional killer, was waiting. A wireless transmitter was taped to Wade's back for the purpose of recording the conversation. Tapes of the conversation were introduced at trial for the purpose of corroboration.

At the motel defendant told Wade that his wife was in Fayetteville and gave him her address. He also gave him a photograph and physical description of her. He told Wade that his wife's death must appear accidental and must occur prior to the cancellation of her life insurance policy on the first of October. Defendant volunteered to raise the fee for the killing to $6,000.00 and the method of payment was discussed. With respect to "front money," defendant said that he had no cash but did have a motorcycle, a Volkswagen bus, and a five-acre tract of land to which titles could be signed over to Bacon who, in turn, could transfer them to Wade. Wade replied that he wanted the titles transferred that day and instructed defendant to put the vehicles in Bacon's name and the property in Wade's name. He told defendant he would wait at the motel until 2:30 that afternoon.

At the conclusion of the conversation, defendant left the room. Police immediately placed him under arrest. Upon being arrested defendant replied, "Oh, my God, how did you find out about it so fast?"

Defendant testified, in substance, as follows. He did not originally intend to have his wife killed but Bacon implanted the idea in his mind. After he and Bacon discussed the life in-

surance policy in Mrs. Keen's name, Bacon suggested that defendant "knock her off" and collect on the policy. Bacon volunteered to kill Mrs. Keen for $5,000.00. When Bacon telephoned him and told him that his friend had arrived, defendant indicated to Bacon that he wanted to call off the thing and did not care to visit Bacon's friend. Bacon responded that his friend had come all the way to Asheville, would be very upset if defendant did not at least talk with him and might seek vengence on defendant. Defendant, although he had no intention of following through with the plan, proceeded to the motel in order to talk the other men out of it. He was frightened and answered Wade's questions because of his fear.

The jury found defendant guilty and judgment was entered imposing a sentence of confinement of not less than five nor more than ten years.

*Attorney General Edmisten, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*McGuire, Wood, Erwin & Crow, by James P. Erwin, Jr., for defendant appellant.*

VAUGHN, Judge.

[1] In support of his contention that the court should have granted his motion for judgment of nonsuit, defendant argues that the State's own evidence shows that:

" . . . the defendant was (1) entrapped and (2) that there was the interposition of a resisting will thereby making the commission of a crime impossible."

We hold that defendant's contentions on entrapment were properly submitted to the jury with instructions from the court which were correct in law and manifestly fair to defendant.

[2] Defendant argues that there could have been no completion of the crime since all parties with whom he spoke were connected with law enforcement. The answer is that the interposition of a resisting will, by a law enforcement officer or anyone else, between the solicitation and the proposed felony is of no consequence. This is so "because the solicitation was complete before the resisting will of another had refused its assent and cooperation." *State v. Hampton*, 210 N.C. 283, 285, 186 S.E. 251, 252 (1936). Defendant was not charged with the crime of con-

spiracy, a crime which was not completed because of the failure of Bacon, in fact, to concur in defendant's scheme to murder defendant's wife. The crime of solicitation to commit a felony is complete with the solicitation even though there could never have been an acquiescence in the scheme by the one solicited.

[3]   Defendant also contends that his conviction of solicitation to commit murder cannot be punished by imprisonment for more than two years. We concede that the applicable statute G.S. 14-3 (b) and the reported cases leave some lack of certainty as to what crimes may be designated and punished as "infamous." *See State v. Surles,* 230 N.C. 272, 52 S.E. 2d 880 (1949) ; Note, 28 N.C. L. Rev. 103 (1949). It appears, nevertheless, to be settled that conspiracy to murder is an infamous offense and punishable as a felony. *State v. Alston,* 264 N.C. 398, 141 S.E. 2d 793 (1965).

The crime of which defendant was convicted is but one step away from conspiracy to murder—and that step is not one defendant could have taken. If Bacon had concurred in defendant's scheme to murder the latter's wife, the conspiracy would have been complete. Bacon's rejection of defendant's atrocious scheme does not render defendant's conduct any less "infamous" than it would have been if his offer had been accepted. We hold that the punishment imposed does not exceed that authorized by law.

We have considered the other contentions made in defendant's brief and find them to be without merit.

No error.

Judges MARTIN and ARNOLD concur.